The first case on the docket is SEC v. Camarco, which is 1914-86, and we'll hear first from the appellant, please. I think you're on mute. Is that better? That's much better. Thanks very much. If it pleases the court, I'm Paul Hugel of Clayman and Rosenberg LLP on behalf of appellants, relief defendants, Paul Camarco and Camarco Living Trust. Appellant Paul Camarco is not alleged to have broken any laws, to have committed any torts or to have breached any fiduciary duties. He's here today because his ex-wife, Sonia, embezzled investor money while working as a registered representative of LPL Financial, a $700 billion wealth management company. According to the SEC, from almost the moment that Sonia began working at LPL, she was siphoning money out of LPL client accounts. For whatever reason, LPL did not notice this for at least five years and possibly much longer. There were no allegations that Paul was aware of Sonia's fraud or that he participated in it in any fashion. After the amendments to 15 U.S.C. 78U, does it matter whether he knew? Yes, it does, Your Honor. I would like you to elaborate on that answer other than just yes. Yes. I take it that there's no doubt that the National Defense Authorization Act applies because it says it applied to all pending matters. Do you quarrel with that? Well, I think it says it applies. I think that applying it here would implicate retroactivity issues. And so you're taking the position that it does not apply because of retroactivity and of ex post facto? Well, I think it's actually a moot question because I think whether it applies or not doesn't change the analysis in this case at all. Because we've never taken the position that the lower court was without authority to award disgorgement on this appeal. This appeal was briefed after the Supreme Court decision in Lew v. SEC. And the Supreme Court made it abundantly clear that the SEC is empowered to seek disgorgement. So on this appeal, we've never taken the position the SEC cannot seek disgorgement from a relief defendant. That's sort of I think that that is settled law. The significance of Lew, though, is that the disgorgement was within the context of an equitable relief. And it required certain things such as there had to be wrongdoing of the person that you're seeking disgorgement from. Well, yes, that was certainly the way that was certainly the context in Lew. But as there's a large body of law that governs how equitable relief is to be awarded. But if we were to interpret the amendments to Section 78U as uncoupling disgorgement from equitable relief, then then those arguments would no longer apply here, would they? Well, if that well, that's not the relief that the SEC sought. The SEC's complaint identified the relief they were seeking was as equitable disgorgement. We asked for a jury trial and we asked for a jury hearing and the judge denied that because he said he was awarding equitable relief. So if we're going to go back and have a reboot, then this would have to be basically the award that was out there was an equitable remedy that the judge awarded. And if the court is going to say, well, Congress is now authorized a legal remedy, that that may be the case. I don't think that's the SEC's position. It's not certainly not how I read the statute, but that's not the relief. The court did not award a legal remedy here. It awarded an equitable remedy. We get around that if we conclude that it would violate either ex post facto or due process to apply the statute and go back to applying the law as it existed under lieu. So that avoids all of that. Yeah, that's the way the district court used it. And we get around some complicated statutory problems or constitutional problems by doing that. I think so. And that's sort of at least that's my reading of the SEC's position is that what the the NDAA did was basically acknowledge what what the court had said in lieu that that disgorgement is an authorized remedy. And it said a new statute of limitations for it, extended it from five years to 10 years. And it also what I read is a limitation. The SEC doesn't agree with this, but it said that it's only it can only seek it from people from defendants who actually received the wrongful gain. So I think what what Congress was doing was addressing the situation which the court criticized in lieu, in which it said that the SEC, for instance, in insider trading cases, had been seeking and obtaining disgorgement awards from tippy against tip oars for money. The tip were never received or against corporate officers for money that went to the corporation. I think what the NDAA made clear is that that's not an issue in this case. Nobody is quarreling that that he got actually got the money. Well, I mean, I think there could be an argument covered. Yeah. Yeah. I mean, there could be an argument that what the NDAA says is the SEC is required to go after the person that got the money in the first place as a result of the fraud, which here would be Sonia Camargo. That's not what you were talking about, though. You know, that's not what I'm talking about. But I think what Congress intended was to limit the SEC's ability to use this theories that had previously used to go after to go after wrongdoers to recover money that went to third parties, that the wrongdoers never received. So. And that's your your view of the statute in its current form. Yes. As amended, as amended, the current statute makes clear what the Supreme Court said in lieu. Few months earlier, is that this court SEC can seek disgorgement. And I think it's very clear and I don't think the SEC disputes this, that the disgorgement identified in that statute is equitable disgorgement. And I guess I'm going to take issue with that. I mean, it seems to me like they separated out and made disgorgement a remedy that's not tied to equitable relief, because it now it's titled civil money penalties and authority to seek disgorgement. And then when it's talking about disgorgement, it just says that you can you can seek disgorgement from any person who received such unjust enrichment. That doesn't say to me any purpose person who knowingly received unjust enrichment. It says if I can show that you received these proceeds, I can claim and get you to disgorge them. So the fact that your client didn't participate in his wife's fraud, but was simply a beneficiary of the fraud. As I read the statute, they can seek disgorgement from it. And they could. We don't we didn't dispute that before the NDAA. Knowledge was never an issue. There was never any dispute that Paul had no knowledge of what his wife was doing. Our argument has been that even before the NDAA did not change the rules of equity, even before the NDAA, knowledge of the third party was not an issue. A completely innocent third party can be sued for disgorgement. But what he can't what what the plaintiff can recover in that case from the third party when non fiduciary non wrongdoer is the is the plaintiff's property or property traceable to it. Well, that's that's the issue. Yeah, the issue is really I mean, there's all these other issues that we could worry about. But the issue you're presenting is really quite singular, I think, which is, does the SEC have to trace particular assets in order to get disgorgement? Or can they simply show that the person of whom you're seeking disgorgement received assets, but you don't need to trace the specific dollars or the specific cow or the specific car to that person? So is that the issue? So let's just go. And and you rely on some language that the Supreme Court had in lieu of saying that, well, sometimes we have strict tracing and they referred only to the Arisa cases. And I'm interested in your argument that that those are analogous to our situation here. And my concern is this, that the disgorgement in Arisa was based upon a not an accounting for profits, but it was it was based upon a tracing document, a tracing theory that isn't necessarily true. It was based upon constructive trust is the words I was looking for. And constructive trust is a different concept than disgorgement. It seems to me constructive trust says you've got something, but you hold it in trust. So you have to have a particular item for constructive trust. And that's what that's what all those Arisa cases are. In this case, though, the SEC isn't saying you've got a particular thing that we want to have returned. We simply say that you've got an obligation to return something in the equivalent of value that you received illegally. Well, the plaintiffs in Arisa cases have brought a variety of different types of claims, including claims for disgorgement, the same claim the SEC brings here. And in this this court in the teats, this teats versus Great West Life dealt exactly with that. And Arisa plaintiff suing under the Arisa statute seeking restitution, equitable lien and disgorgement and an accounting. It's the same posture we have here. The reason what the. So which case was that you're saying that that is an Arisa case that did not use constructive trust, did not rely. It was a plaintiff arguing that he was entitled to disgorgement, just like the SEC. I don't care what the plaintiff argued that the courts holding it. First thing, I didn't write the case name down. I'm sure I looked at it. Sure. It's it's teats, teats versus Great West Life. Nine twenty one F third twelve hundred. And in fact, Judge Bacharach and Judge McHugh were signed on that decision. In that case, I'm not interested so much in what the plaintiffs argued, but what did the court decide? Did the court's ruling on constructive trust or did the courts really? The court analyzed it from both angles. The court first looked at whether there could be a constructive trust. And it said no, because the plaintiff had not identified any property that rightfully belonged to it in the defendant's possession. The court then looked at whether there could be disgorgement or an accounting. And it noted that under equitable principles of this governing disgorgement and accounting, the tracing rules were relaxed because under under those principles, a plaintiff could obtain profits without the need to trace particular property that belonged to him into those profits. But it still needed to identify property, his property in the hands of the defendant had generated those profits. And in that. So in other words, if a plaintiff can say you've stolen my patent or you've taken my forest or you've stolen money from me and you generated profits with that under the under disgorgement theory, a court could award those profits without the need to trace. But the point is still had to identify his property that was used to generate profits. But accounting for profits, again, is a fairly different legal theory. So that case, then, because it was dealing with accounting for profits is different than a constructive trust or a disgorgement. I mean, that's what that is. The court's decision addressed disgorgement and accounting for profits under that analysis. That's the analysis that the 10th Circuit has applied to a disgorgement claim. There's not a different disgorgement claim if it's brought under a risk of statute versus securities law statute. It's the same claim. There's the equitable by definition, the equitable remedies that are available to a plaintiff or the remedies that existed in the court of chancery at the time the Constitution was drafted. There's no such thing as a new equitable remedy. It's new. It's not an equitable remedy. It's got to be a legal remedy. I take it. You don't. Go ahead. I'd like to reserve some time for my rebuttal. I'm down to a minute and a half. Let's go ahead and stop the clock. Kevin, at a minute and a half. Judge McHugh, I think you had a question. No, I have the amendment to the statute separates out disgorgement from equitable remedies. I mean, it seems to me that Congress is trying to send us a message that it passed the statute in response to Lou that it's created a civil disgorgement remedy that isn't limited by equitable concepts. If that's the case, then the court's lower court's decision would have to be reversed. Well, that's I mean, I don't know if it would have to be reversed on that ground, because it's just not the award that the court below entered. The court below was stated it was awarding equitable relief to the SEC and the SEC only asked for equitable relief, but then asked for any type of civil disgorgement, non equitable remedy. But I don't, Judge Ebel, I'm not sure I agree with the analysis. I'm sorry, Judge McHugh, I don't agree with the analysis. Because what I think you could look at what Congress did in the NDAA is saying, look, we've got the Supreme Court has already said that disgorgement is a equitable remedy. We want to extend the statute of limitations for that equitable remedy from five years to 10 years. And we also want to make clear that that the SEC can't use it to obtain funds from a defendant, the defendant never received. So I think you could easily you could easily harmonize those two provisions of the statute by saying court said you're entitled to get all district court can award any equitable relief, including disgorgement. Here's the rules that apply to disgorgements. If the court was saying we're creating a new legal remedy under the statute. And we basically that's, that's not really the issue here. That's not the remedy that the SEC was seeking in this case and it's not the remedy that was awarded. Judge Bell, did you have a question? No. I do have a few questions, Mr. Hubel. First, in your post judgment brief that's in the appendix at 509 you said under Colorado law, Paul's creditors may reach his contributive share of the assets and Sonia's creditors may reach the contributor share of the assets, referring to the assets in the trust. How much did Sonia contribute to the trust. The SEC never really sort of did. It was the SEC never took a position that it needed to sort of get very specific on that. Well I understand that. Yeah, you have any information about that. Yeah, there were the trust assets consisted primarily of five pieces of real estate. Two of those, one of those pieces of real estate, Sonia bought on her own, I think with a mortgage and money that she put into it herself, and that one. My clients have never sort of they said that's, they have nothing to do with it. I don't mean to. I don't mean to get you off but I understand all that. The reason I'm in, let me just chase. If I understand your argument on page 509 to say that, let's say she contributed a total through the either the poor rental properties or the Woodhaven mortgage, or whatever. To baby to buy false G, if she contributed say $800,000 to the trust, then you don't have any question about the SEC visibility to recoup that $800,000 out of the trust. So, I do to the, I think what happened, my understanding of the way it works would work under Colorado law for this trust is that each of them would have an interest in the trust equal to their share of what they put into it. So if Sonia put an 800,000 and Paul put an 800,000 half the trust would belong to her and half would belong to Paul, so it's not a question of how much she put in it's a question of what her proportionate share will be. I'm sorry, go ahead. So I'm trying to understand what you're saying. So you're saying if she put in 800,000 of stolen proceeds that if his interest was 50%, 400,000 of those would become untouchable by the SEC as soon as she contributed. Let's say that the trust had only one asset, one house, and it was purchased with $800,000 of money that Sonia put in she stole from her clients and 800,000 that Paul put in from his personal savings. So they had one asset worth. There's one asset. I'm saying half of that trust assets would belong to Sonia, and should be used to pay her debts and the other half would belong to Paul. So, so let's say if there's $865,000 in the trust, and she contributed, say, $750,000 to the trust and Paul contributed $115,000 to the trust, then what you're saying is that SEC could recoup say roughly I can't do the math, but he has a 85% of the trust assets. That's not a this, not as a non of the discouragement issue but as a simple matter of collecting a judgment yes. All right, those those would be Sonia's at Sonia's at Sonia's has an interest in the trust equal to what you put into equal to her share of what you put into it. So if she put in 75% of the money of the constitute the trust assets 75% of that trust can be used to satisfy her debts. Okay, that's not what the SEC ever attempted to do. No, I understand that I'm just frankly wondering whether it's really even a justiciable issue, depending on how much Sonia and Paul contributed to the trust, but in any event, let me ask you a different question. So, the, the, the district court, obviously did not view equitable relief the way that you do, but Mr Hannigan did purport to attempt some tracing, for example, with the money that went into the old coast road property the hundred and six Bale Street. And there was some tracing, I believe, with regard to how Paul got the money to buy that Jeep in 2016. So if we do reverse, should we should should the reversal be with instructions to judge Jackson to reconsider and determine from the record, how much of the assets for the trust and Paul that have not been dissipated are in fact traceable. I think that's exactly what that's it that's precisely what I asked Judge Jackson to do and the SEC opposed that and he did not do that. I think that is the Paul under equitable rules, Paul can be ordered to disgorge money that was stolen from investors that still in his possession or anything traceable to that money that that that's what we've been asking for all along. You're not asking us to say reverse the relief defendants of nothing. No, but what judge. I've never been asking that what what Judge Jackson said is sell the house that you bought 10 years before the fraud, so you can pay LPL for what it had to pay out for being sued by Sonia's clients. Judge Jackson simply said, here's how much money is in the trust. Here's what I here's your liquidate everything. Here's how much money I think it'll be. You'll get give it all to LPL essentially. Okay, thank you for indulging me. Judge Bell, did you have any additional questions. No judgment to you. Did you know. All right. Thank you. We'll hear from the bellies county. May it please the court, David LaCitsa for the Securities and Exchange Commission. Paul Camargo and the Camargo Trust received over $950,000 in fraud proceeds as gifts from Paul's wife Sonia. And under well-established case law about persons who receive fraud proceeds to which they have no legitimate claim, the relief ordered was not an abuse of discretion. Now, those are those are really the two elements under equity that the money has to come from a securities violation goes to the violator from the violator to the relief defendants. And second, that the relief defendants do not have entitlement to that money. Now, we don't believe that the NDA does and NDA amendments do anything more than confirm. What is what was the equitable requirements? We don't think that that's in any way uncoupled from equitable relief. It's not enough for a statute to mention the word disgorgement. Had that been the case, it would have been easy in lieu. There are many statutes that mention disgorgement that lieu deals with, especially in the Dodd-Frank Act and also in terms of administrative agency and directing of where money could go. But the court says when that word is used, there's a presumption that it takes with that word everything that comes with it from equity. And we're willing to accept the limitations of equity as well as the benefits of equity. For instance, we do not believe that the NDA would, you know, all means that the commission is no longer have to show the meet the restrictions on joint and several liability or expenses for profits. But here it does not do anything more than confirm what's in equity as far as the knowledge of the recipient. Wait a minute before you get the knowledge. Yes. What about your opposing counsel's argument that in lieu, the court specifically said that you have to consult historical sources to determine whether or not the remedy would be have typically have been available under the original judiciary act from innocent transferees general assets? Yes. Her argument. And so the argument is that precisely for the same reasons that Knutson and in all of those Arisa cases pieces as our own version of that, that you have to equitably trace the assets that have not been dissipated. Whomever you want to recoup those assets, whether it's through a restore restitution theory or disgorgement. And so how do you avoid that apart from the new statute? So there's an exception, a limited exception in the Knudsen case in footnote two for an accounting for profits. The judge Ebel was talking about as well. And Lou situates disgorgement firmly within that exception. And repeatedly, the Arisa cases are cited for the proposition that you look to typical equity practice. And we showed in our brief from an extensive demonstration that on twenty five to thirty that relief defendants is typically available in equity, especially the restatement of restitution section one, two, three. How do you distinguish teats, which in their the panel specifically addressed accounting for profits and said, as I recall, that it was accounting for profits is referring to the profits earned from property that can be traced back to the victim. So there still has to be an identifiable risk in which to recoup the profits derived from that risk. Well, so teats is a case where, yes, the private plaintiff is trying to fit within the accounting for profits exception, but he can't because he, quote, failed to identify any money received by Great West that had been taken from him. And the court was, quote, left to guess what he was even seeking. Here, the commission identified the money that Sonia took from investors and was received by Paul and the trust. So really, the plaintiff in teeth doesn't get off the ground. He doesn't even get to tracing. He can't show what was received. The court struggles and says, what are you asking for? Is it the amounts that people contributed to the employment benefits plan? Or is it the margin that Great West received? Or is it some excess above a reasonable amount? Like it seemed to be a general damages claim, as most of these ERISA cases are because they're not truly accounting for profits. Now, the Knudsen footnote talks about and says you do not have to identify a particular res and cites dobs. And we would also point to the restatement of restitution, section one, two, three, which makes it very clear that if someone disposes of the money, that's not the end. You see, the relief defendant is unjustly enriched as soon as they receive the money. And when they spend the money, it's not that they have not been unjustly enriched by that. Now, what Mr. Hubel is saying, of course, you get under the restatement of restitution. You can recoup legal restitution. There is legal disgorgement. But what he's saying is that when you're recouping money other than identifiable property from the victims, now you are seeking a legal remedy. And what he's saying is Judge Jackson's. I mean, he specifically used the phrase equitable disgorgement. He denied his request for a jury trial because the SEC was seeking equitable, not legal relief. So I don't think anybody, including opposing counsel, disagrees that you can recoup legal restitution or legal disgorgement under the restatement of restitution. But what he's saying is that's not what you sought. That's not what Judge Jackson gave. So the accounting for profits remedy, which Lou says 14 times, is what disgorgement is. And this would have been a harder case, maybe appeal for the commission prior to Lou. But it so firmly situates that within that exception. Once you're in that exception, this tracing to particular res is simply not required. And it is equitable restitution at that point. That section of restitution that I point to, Section 123, talks about a duty to account for others. It's an accounting for profits equitable remedy. Agreed, there's legal restitution that would be different. But Lou identifies the restitution that we're seeking as equitable. That's the fight in Lou that the commission wins. And it's also consistent with pre-Lou case law as far as, you know, tracing not being applicable to SEC cases in terms of iCubed and Rosenthal, World Capital. And in any event, as has been discussed, there's a component of the receipt that the showing of the commission must make and the district court must find of receiving the profits. And the expert here did trace. Do you think we can ignore the National Defense Authorization Act and just go under the equitable approach? Or do you think how does the NDAA legally apply to our analysis here? I think that the, you know, the NDAA does apply. And it just confirms, you know, discordance available. Apart from confirming, can we, you want us to affirm, can we affirm, do you urge that we affirm under equitable doctrines without regard to the NDAA other than using it for whatever evidentiary or supportive evidence it might offer? That's exactly right. This court does not need to reach any NDAA issue to affirm the judgment, just as you said. And I had just one other quick factual question. Do you? There's a separate issue here about whether excess proceeds can go to LPL financial if there's more money recovered than necessary to refund to the defrauded investors or defrauded people. My question is, was there extra money that went to LPL? Or is it all hypothetical? Well, I think it's a matter of that it might be a little premature to make that, to figure out exactly what will go to LPL or what won't. The district court fashioned a remedy and suggested that as a provider of compensation, it would constitute equitable restitution to reimburse LPL. LPL, in the record, has reimbursed investors to the tune of $194,000. We showed that that seems to be, you know, very short of the, if you add up all the money that's available to investors, that when you satisfy their claims, there won't be any money left for LPL. But that's something for the district court can decide. It's not up to us. So we don't know yet whether LPL would get any extra money under the court's ruling. But did LPL have a legal obligation to reimburse people that lost money, were defrauded? Or was this something that they did as a volunteer? This was a voluntary payment. There was no obligation. They are voluntary advancing the funds, and it benefits investors by getting money quickly into their hands. Yes, but the fact it's volunteering, I think, weakens, significantly weakens their claim to get extra money if it's out there, as opposed to having the money returned to its original source. That's one way of looking at it. Another way is that if they had been compelled, they would have less of a claim that they were under duty bound or they had been found liable. It's really like an unclean hands determination that the district judge made and determined that they don't have unclean hands. And at that point, it's really a form of equitable subrogation, where legal subrogation would be if they were contractually bound, obligated, or a judgment. But it's actually equitable subrogation when someone advances funds in a circumstance like this. I thought LPL had been sued for failure to adequately supervise. There is an allegation that the district court considered in determining this question of whether LPL could be ultimate receiver of funds, disgorged funds. And I don't know the status of that, but I do know that the district court could consider those allegations and still made this determination, which is just classically unclean hands. But there's been no determination or suit by the commission that the LPL did anything wrong. And it would be a very different case if LPL had unclean hands or had been found to do, had engaged in some kind of misconduct here. The district court fashioned this remedy itself and remains in control of it. It's at its discretion what to do with money after it's put into the district court's registry. But to the extent that LPL has not engaged in wrongdoing, it is reasonable and within the court's discretion to say that if there's money at the very end to give it to LPL as a provider of compensation. Seems a little odd, you know, to say, you know, let's say somebody sues me and I say, OK, well, I'm going to pay you. I'm going to get a release. I'm going to settle. There's going to be consideration through the form of the release. And then through this independent administrative action, the SEC says, OK, that's OK. I'm going to get you your money back. And so I've settled for free. Well, I mean, I think differently situated than these other wrongfully stolen from investors. I mean, I agree. All the wrongfully stolen investors get reimbursed first. LPL is at the end of the line. And I think it would definitely be very odd if LPL took anywhere other than at the end of that line. It's only after. So we can't give the money. The district court can't give the money to investors who already received money because there would be a double compensation, a windfall. And the question is, well, why would they be doubly compensated? And the answer is, well, LPL gave them the money that really would have come from disgorgement to them. So it makes sense to the district court reasoned to give the money, you know, to LPL as a provider. And that way, LPL effectively became an agent of the court or the SEC in making sure that investors got paid quickly and didn't have to wait, for instance, for the end of an appeal. You know, during all this time, investors have the money. And so reimbursing LPL is within the court's discretion should that situation arise. And, you know, that was the court's call. And it seemed like an elegant solution, you know, to the court after the court came up with this. That, you know, it restores the status quo. It gets rid of the problem of circumvention. And, you know, really, Paul and the trust have the second worst claim in the world to this money. Sonia certainly has the worst claim. But Paul and the trust, as enjoyers of unjust enrichment with awareness of the wrongdoing, there's just no question. It's ludicrous to say that their claim is better than LPL's. With awareness of the wrongdoing, I thought the district court made a specific finding that Paul was unaware of the wrongdoing. Well, no, on on page 8592, the district court says Paul was not unaware that the funds were tainted. Well, I'm confused about it. I was I was with Judge McHugh on that. So so I guess I mean, give us the page that we're both at least what you and I are both going to have to look at that. Give us the page that you're referring to. It's on page 8592. And the court says it's hard to believe he was completely unaware that anything might be amiss. Given one, the amounts were stolen, the amounts that were stolen to the facts, the fact that the theft spanned such a long period. And three, that his wife was able to provide the things that his wife was able to provide for the family over the years. But to be clear, the knowledge is a required element. But you're quoting you're quoting the colloquy in oral argument. No, that's the order. That's the order on 8592. OK, well, what what page of the order? It is page 13 of the order, paragraph six. This is this is the kind of finding you would see for someone who's a relief defendant. Remember, the argument isn't that they're wrongdoers who you'd have to show a high level of scienter or knowledge or recklessness. This is the kind of notice finding that gives the court additional comfort here. Again, it's not an element of what it takes to be a relief defendant. And again, restatement section one, two, three makes that clear. It's not about knowledge. You can be completely innocent and still be a receiver of fraud proceeds to which you have no legitimate claim. And in accounting for profits, it's perfectly equitable to require a disgorgement from that person. So if this court is corrupt, sorry, sorry. Or did say the district court found that no evidence was presented that Paul knew that his wife was stealing from her clients, but that he unquestionably benefited from the funds misappropriated by Sonia. That's where I'm getting that the district court made a specific finding that there was no evidence that Paul knew about the theft by Sonia. This court, if you know, again, the knowledge is not required. It's enough for a relief defendant. If the court disagrees that this is a finding of some kind of notice of wrongdoing rather than specific knowledge of the fraud. We're comfortable with that because let me I want to make sure I understand your position. Your position is that even looking at this as equitable disgorgement, that there was no obligation on the SEC to show that all or the trust had knowledge of the wrongdoing. Or to trace the proceeds that you recovered from the Paul and the trust. That's that's correct. That's how your only burden. The SEC's only burden is to show that Paul received tainted funds. No, that's not correct. I'm sorry. I can let me let me explain. So the commission has to show that there's a violation. Number one. Number two, that the relief defendant received the ill-gotten funds. Number three, that it's a result of the violation. Some causal connection. Number four, that the relief defendant has no legitimate claim to those funds. And then the court still has a reservoir of discretion after all of that. Courts hold us to our burden. We lose relief defendant cases in district courts and on appeal frequently. Where courts say you didn't show receipts. For instance, here the district court credited Paul for many contributions. We also lose many relief defendants on the issue of legitimate claim. Where they show consideration or they were a bona fide purchaser. Or they took after a bona fide purchaser broke the causal connection in somewhere along the link of the money before they received it. And in many cases, you know, relief defendants show this. So I understand that that's how accounting for profit works. And the reason is because wrongdoing sets the world out of joint. In a way that contract or breaching a contract or a risk agreement does not. And when you're putting the world back together after wrongdoing and fraud, the courts of equity permit a certain, you know, lack of exactitude in where the joints are put back together. And so, you know, there's a lot of people who were damaged as a result of this fraud. And then equity tries to put the world back together. And one way is to make sure that the fraud proceeds are not kept in the hands of wrongdoers. Or people who would just very easily in these circumstances transfer to their families, to trusts for their benefit. I mean, this is sort of an easy classic relief defendant case. I don't want to cut you short in answering his question. But I want to make sure you're still answering his question. Sure. Way out of time. I'm sorry. That's no, you're fine. But if you go ahead and wrap up your answer. Well, I would just think, you know, I think there's some concern about the extent of the accounting for profits. And if you review the case law in this area and their statement of restitution, section one, two, three, you'd see that this is the classic accounting for profits. Remedy is what we're seeking here. OK. Thank you. Did you have any follow up? No. OK. Bill. OK. Thank you. The appellate still has some time for rebuttal. You're on mute. I'd like to address the issues about LPL that Judge Backrock and Judge Bell raised. In 2019, LPL brought a lawsuit against Paul Camargo. Lawsuit's not part of the record on this appeal, but it's a public document and a citation to it is in our reply brief in the table of authorities. LPL and its complaint against Paul is trying to recover the same money that the SEC now wants to get for him. And it said that its investors brought claim, multiple investors brought claims against LPL for not preventing, detecting and preventing Sonya's fraud. And LPL paid out 1.4 million on those claims as of January 2019. This was two years ago. It said all but three of the claims, I think, had been paid out, had been settled by LPL. So LPL is not paying out of the goodness of its heart. It's paid because it was sued for its failure to detect its employees fraud for ongoing fraud for many years. The district court's order here wasn't equitable in either sense, either the colloquial or the legal sense of the word. Between LPL and Paul, LPL was the party that was in a better position to detect Sonya's fraud. And unlike Paul, LPL had a duty to protect its investors' funds from theft. More importantly, the district court's order was not equitable in the legal sense of the word because it was not equitable relief as the Supreme Court has defined that term. And as this very court defined that term in Teats versus Great West. Quick follow up. So we're all of LPL's payments in settlement of lawsuits that they were involved with. Was that in connection with settlements and lawsuits? I don't I since since LPL is regulated, I would imagine they were FINRA arbitration claims, not lawsuits. But, yeah, the LPL says it paid out one million claims in settlements. Thank you. That's all I have. Yes. And so as a practical matter, if two years ago LPL had paid out one point four million dollars. Remember, Sonya is only alleged to have embezzled one point seven million. So virtually as a practical matter, virtually all of this boardroom here is going to go to LPL if this order stands. And if if you'll indulge me on that question, do you agree that under an accounting for profit framework, that all that had to be proved as against Paul was that he received the funds and he had no legitimate claim? That's not remotely what the law says and what the rules of equity says. This this issue was gone over in detail in Teats at. Don't have the page number in front of me, but this this was gone. The court went over this in detail in for an accounting for profits or for a disgorgement. The plaintiff has to identify property that belonged to the plaintiff that was in the defendant's hands. The defendant used to generate profits. The plaintiff can then get those profits without having to trace them. But it needs to identify property that rightfully belonged to the plaintiff that the defendant used to generate profits. If I steal the defendants, I take the defendant's machine or his patents and earn profits on it. Court of equity using a disgorgement or an accounting theory could make me disgorge all my profits I generated from the plaintiff's property. The plaintiff still has to identify his property that I use to make my profits. But that's only in the claim of the accounting for profits. That's not just that's also for disgorgement. Well, that's not the language you read to us was specifically limited to accounting for profits. I think the law is pretty clear on that. I'm reading from teats page. One second. Well, we can we'll read it ourselves to two of our panel members. We're on that. So let's not waste any more time. The court the court analyzed accounting for profits and we'll figure it out. OK. Judge Bell or Judge McHugh, do you have any additional questions? No, no. OK. Matter will be submitted. I do have an editorial comment. As a court, we're pretty spoiled. We're accustomed to excellent advocacy in your briefs and argument. But in this case, I thought that the briefing and the oral advocacy today were absolutely excellent. And I do want to take the opportunity to thank both sides for your hard work and your excellent preparation. This better be submitted.